### JOHN J. DACEY *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   January 11, 12, 1906. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence,* Employer's liability.  *Railroad.*

In an action by a workman employed by a railroad company in a freight yard against his employer under R. L. c. 106, § 71, cl. 3, for personal injuries, it appeared that the plaintiff in the course of his employment was engaged in helping the employees of a teamster to load stone on a flat car, that an old weather beaten plank about eighteen feet long which had been used to pry the stone had been thrown by one of the employees of the teamster upon the car in such a way that it projected over the edge of the car and over a parallel track, that a train consisting of a locomotive engine and eight cars was backing down on the parallel track at the rate of about six miles an hour with a clear track ahead, that as the train was moving a flat car came first and next was a furniture car on the top of which were two brakemen, that the conductor was standing about in the centre of the flat car looking ahead all the time to see if the track was clear, that when he first saw the plank it was about one hundred and eighty or two hundred feet away, that he at once gave the stop signal to the brakemen on the top of the furniture car and they repeated it to the engineer who stopped the train as quickly as possible, that the plank was struck by the furniture car, causing the plaintiff's injuries, and that the train came to a stop when the furniture car was ten feet past the car on which the plaintiff was injured. *Held,* that there was no evidence of negligence on the part of the conductor in charge of the moving train.

LATHROP, J.  This is an action of tort under the R. L. c. 106, § 71, cl. 3, for personal injuries sustained by the plaintiff while in the defendant's employ.  At the trial in the Superior Court, at the close of the plaintiff's evidence, the judge refused to order a verdict for the defendant.  The jury returned a verdict for the plaintiff; and the case is before us on the defendant's exceptions.

The accident occurred on August 23, 1902, at two o'clock in the afternoon, in the defendant's freight yard in Charlestown. The plaintiff had been in the employ of the defendant since 1873, and had been at work in the freight yard for five years. In the freight yard were three tracks, known as number 1, number 2 and number 3.  The tracks numbered 1 and 3 were used for receiving and delivering heavy freight, and there was a paved roadway on one side of each track.  Between these two

tracks was a track numbered 2, which was used for trains, and there was no passageway on either side of this track. The tracks were of the usual width, four feet eight and a half inches, and the space between track 1 and track 2, from the centre of the rails, was seven feet four and a half inches.

On the day in question, one Sullivan, carrying on business as a teamster, had sent three men with two teams loaded with cut stone to the freight yard for shipment upon a flat car. These men were in the employ of Sullivan, and not of the defendant. The plaintiff was sent to stake out the car and to help Sullivan's men in packing the stone on the car. Staking out consists in putting wooden stakes into irons fitted for them around the car, and boards against the stakes, so as to form a barrier, against which the stone was packed. The stones were packed with hay around and between them to keep them from injury. Most of the stone had been loaded upon the car and packed, the plaintiff had staked the car, beginning on the side farthest away from the teams and nearest to track number 2, and continuing round the car, and the car had been substantially filled with stone packed in hay, except a small alley way at the point of loading, running crosswise of the car. While loading the stone on to the car Sullivan's men had used an old, weather beaten piece of plank which, as the plaintiff described it, was "kind of black," as a lever to pry the stone. This plank the plaintiff testified he had seen before for three years, and that it was about eighteen feet long, about a foot wide, and two inches thick. Just before the accident, one of Sullivan's men had thrown this plank on to the car in such a way that it projected so far over the edge of the car that it was over track 2. A train backing down on track 2, struck this plank, and caused the injury to the plaintiff.

For the purposes of the case we assume that there was sufficient evidence of due care on the part of the plaintiff, but we fail to find any evidence of negligence on the part of the conductor of the train, whose negligence is charged as the cause of the injury.

The train which struck the plank consisted of a locomotive engine and eight cars. As the train was backed down there was in front a flat car, on which the conductor stood, then a furniture car, and then six flat cars between that car and the

engine. Two brakemen were on top of the furniture car, and the other brakeman was on the flat car next to the engine. When the conductor first saw the plank it was about one hundred and eighty or two hundred feet away. He at once gave the stop signal to the brakemen on the top of the furniture car. They repeated it to the engineer, who stopped the train as quickly as possible. The plank went over the top of the flat car and was struck by the furniture car. The train came to a stop when the furniture car was ten feet by the car on which the plaintiff was hurt. The train backing down was going about six miles an hour, with a clear track ahead.

It cannot be said that there was anything in the rate of speed of the train which would authorize the jury to find that the conductor was negligent. With a clear track before him he was authorized to go at that rate of speed. In *Merrill* v. *Eastern Railroad*, 139 Mass. 238, it was held that it was not gross negligence to run a train of cars at the rate of thirty miles an hour on a straight track. The speed in the case before us was not unusual, and the conductor had no reason to expect that a plank would project from a car on another track over his track.

It is suggested that the jury might find that the conductor did not keep a proper lookout; but there was no evidence of this. The conductor, who was called as a witness by the plaintiff, testified : " As I came down on the front flat car, I was facing Boston. I was about the centre of the car, riding down, looking ahead all the time to see if the track was clear." This was all the direct evidence on the subject, and we find nothing in the facts of the case to warrant a jury in coming to a different conclusion. The edge of a dark, weather beaten plank does not present an object to the eye easily discernible.

*Exceptions sustained.*

*A. R. Tisdale,* for the defendant.
*J. P. Crosby,* for the plaintiff.